UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ERIC JIRAH KELLEY )<br>      Plaintiff, )<br>)<br>v. )<br>)<br>DIRECTOR A.T. WALL, et al., )<br>      Defendants. ) | C.A. No. 11-10916-JLT |

**REPORT AND RECOMMENDATION**
[Docket Nos. 3, 9, 11, 14, 20, 26, 38, 53, 56, 58, 59, 62, 65, 66]

January 12, 2012

Boal, M.J.

Eric Jirah Kelley ("Kelley"), a Massachusetts inmate confined to the Adult Correctional Institution ("ACI") in Rhode Island, brings this action pursuant to 42 U.S.C. § 1983 against Director of the Rhode Island Department of Corrections, A.T. Wall; Warden James Weeden; Captain Jeff Aceto; "Lieutenant Alves"; Corrections Officer Michael Hetu (collectively, the "RI DOC Defendants"); the Commissioner of the Massachusetts Department of Correction[1]; and Carol Mici, Assistant Deputy Commissioner for Classification (collectively, the "MA DOC Defendants"). (Docket No. 1).[2]

---

[1] Kelley did not provide the name of the Commissioner of the Massachusetts Department of Correction, which is Luis Spencer. See Memorandum of Law Submitted In Support Of The Motion To Dismiss of Named Defendants Commissioner Of Correction And Carol Mici ("MA DOC Defendants' Memo."), Docket No. 54.

[2] On December 14, 2011, Kelley filed an Amended Complaint. (Docket No. 64). Rule 15 of the Federal Rules of Civil Procedure provides that a party may amend its pleading once as a matter of course within 21 days after serving the original complaint or, inter alia, 21 days after service of a motion under Rule 12(b), whichever is earlier. Fed. R. Civ. P. 15(a)(1). Here, Kelley filed the original complaint on May 2, 2011, and it was served on all defendants by September 8, 2011. The RI DOC Defendants filed their Rule 12(b) motion on September 8, 2011. Accordingly, under Rule 15(a)(1) Kelley could amend his complaint as of right on or before September 29, 2011. In addition, a party may amend its pleading with the other party's consent or leave of court. Fed. R. Civ. P. 15(a)(2). On August 12, 2011, the Court granted

On September 8, 2011, the RI DOC Defendants moved to dismiss Kelley's claims against them pursuant to Fed. R. Civ. P. 12(b)(2) for lack of personal jurisdiction. (Docket No. 59). On September 20, 2011, the MA DOC Defendants moved to dismiss Kelley's claims against them pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim. (Docket No. 53). Kelley has filed a motion for summary judgment, as well as several motions seeking injunctive and other relief. See Docket Nos. 3, 9, 11, 14, 20, 26, 38, 56, 58, 62, 65, 66.[3] As more fully detailed below, this Court recommends that the District Court grant the defendants' motions to dismiss.[4]

I.      **FACTS**[5]

Kelley is a Massachusetts prisoner who at the time of the filing of his complaint was housed at the ACI in Cranston, Rhode Island. Complaint, p. 3; Kelley Affidavit, p. 1. The

---

Kelley leave to amend his complaint within 10 days of his receipt of the Order, which he failed to do. See August 12, 2011 Order, Docket No. 25. Kelley has filed no other motion seeking leave to file an amended complaint. Accordingly, this Court has not considered the allegations contained in the Amended Complaint. In any event, Kelley's proposed amended complaint seeks to add additional allegations against the RI DOC Defendants. Because Kelley has not established that the Court has personal jurisdiction over the RI DOC Defendants, any such amendment by Kelley would be futile.

[3] Eric Kelley, who refers to himself as "a.k.a. (Jirah) Kelley" appears to be a frequent litigant, who, upon filing a complaint, follows up with a barrage of motions. See e.g., Kelley v. DiPaola, 379 F. Supp. 2d 96, 98 (D. Mass. 2005); Kelley v. Cabral, 06-11837, 2008 U.S. Dist. LEXIS 54925, *6-7 (D. Mass. July 21, 2008); Kelley v. Carcieri, 07-341, 2008 U.S. Dist. LEXIS 42501, * 1 (D.R.I. May 19, 2008).

[4] On July 12, 2011, the District Court referred this action to the undersigned for full pretrial case management and report and recommendation on dispositive motions. (Docket No. 13). The Court has ruled on Docket Nos. 39 and 64, which are not dispositive, by separate order.

[5] The facts are derived from the Complaint and its accompanying affidavit, which contains additional allegations. See Kelley Affidavit, Docket No. 3-1. The Court takes as true all well-pleaded allegations in the Complaint and draws all reasonable inferences in Kelley's favor. See Morales-Tañon v. Puerto Rico Electric Power Authority, 524 F.3d 15, 17 (1st Cir. 2008); Hannon v. Beard, 524 F.3d 275, 279 (1st Cir. 2008).

Massachusetts Department of Correction transferred Kelley from a Massachusetts prison to the custody of the Rhode Island Department of Corrections pursuant to the New England Interstate Corrections Compact (the "Compact"), Mass. Gen. Laws c. 125 App. § 1-1. Id. The Compact provides that participating states may transfer their prisoners to other participating states in order to "serv[e] the best interests of such offenders and of society" and "effect[] economies in capital expenditures and operational costs." New England Interstate Corrections Compact, c. 125 App. § 2-1. The Compact also provides that the participating states will enter into contracts with each other that provide for, among other things, payments for inmate maintenance. Id.

### A. Allegations Against RI DOC Defendants

Kelley alleges that Warden Weeden was deliberately indifferent to his safety, maced him without cause, afflicted him with "many forms of hardship and cruel & unusual punishment," and gave orders to other defendants to harm and harass Kelley. Complaint, p. 4-5. Kelley also alleges that the prison has constitutionally deficient conditions,[6] that Weeden has responsibility for these conditions, and that Weeden was aware of any and all decisions concerning Kelley's "housing, treatment and punishment." Complaint, p. 4.

Kelley alleges that Captain Aceto harassed Kelley and placed him in segregation in retaliation for Kelley serving him with a summons in a Rhode Island civil case. Complaint, p. 5. Aceto also allegedly maced and/or tear gassed Kelley in December 2010 and placed him in an unsafe cell block in the hopes that Kelley would be harmed. Id.

Lieutenant Alves, who Kelley alleges is responsible for housing placements at the ACI,

---

[6] These conditions include: (1) uncovered pipes, (2) deficient plumbing, (3) lack of fire sprinkler systems, (4) portable toilets, (5) denial of outside recreation in segregation, (6) refusal to provide clothing, (7) extensive forced cohabitation with vermin, (8) asbestos, and (9) mold and mildew. Complaint, p. 4.

refused Kelley a safe housing placement and violated department policy and federal mail practices by reading a letter that belonged to Kelley from the President of the United States. Complaint, p. 3, 5. Kelley alleges that Hetu, a corrections officer, took this letter from Kelley by force and made racist statements towards him. Complaint, p. 5.

Kelley alleges that Director Wall is liable because he "supervises, oversees, and has constructive control, care and custody of the entire A.C.I." and that he has acted "in an egregious, arbitrary, and capricious manner." Complaint, p. 2.

### B. Allegations Against MA DOC Defendants

Kelley alleges that the Commissioner of the Massachusetts DOC is responsible for all of the injuries he has received in Rhode Island because Kelley is a Massachusetts prisoner. Complaint, p. 6.

Kelley alleges that Mici, the Assistant Deputy Commissioner of Classification, received correspondence from two Massachusetts prison officials that stated that Kelley's life was in danger and, although she sent a letter to Rhode Island's Classification Director, did not take any steps to ensure Kelley's safety. Complaint, p. 6. Kelley also alleges that he told Mici that his life was in danger and that prison officials sent him a letter that stated that they were concerned about his safety, but Mici did not make any effort to protect him. Kelley Affidavit, p. 1.

## II. ANALYSIS

### A. RI DOC Defendants' Motion to Dismiss

The RI DOC Defendants moved to dismiss Kelley's complaint pursuant to Fed. R. Civ. P. 12(b)(2) on the basis that this Court lacks personal jurisdiction over them. RI DOC Defendant's Memorandum, p. 2. (Docket No. 60). Kelley argues that this Court has jurisdiction because the

RI DOC Defendants have conducted business in Massachusetts through their participation in the Compact. Plaintiff's Opposition (Docket No. 61), p. 2; Plaintiff's Opposition (Docket No. 63), p. 1. As detailed more fully below, Kelley has not established that the Court has personal jurisdiction over the RI DOC Defendants and therefore the Court recommends dismissal of Kelley's claims against them.

      1.      Standard of Review

Although the RI DOC Defendants filed the motion to dismiss, Kelley ultimately bears the burden of persuading the Court that it has personal jurisdiction over the RI DOC Defendants. Hannon v. Beard, 524 F.3d 275, 279 (1st Cir. 2008). In considering a motion to dismiss, a court may choose from three methods for determining whether the plaintiff has met its burden of establishing personal jurisdiction. Adelson v. Hananel, 510 F.3d 43, 48 (1st Cir. 2007). These methods include the prima facie method, the "preponderance of the evidence" method, and the "likelihood" method. Foster-Miller, Inc. v. Babcock & Wilcox Canada, 46 F.3d 138, 145-7 (1st Cir. 1995). When, as here, a court rules on a motion to dismiss for lack of personal jurisdiction without holding an evidentiary hearing, the "prima facie" standard governs its determination. United States v. Swiss American Bank, Ltd., 274 F.3d 610, 618 (1st Cir. 2001). Under the prima facie standard, Kelley must "go beyond the pleadings and make affirmative proof" to demonstrate the existence of personal jurisdiction. Id. at 619. However, the Court "accept[s] the plaintiff's (properly documented) evidentiary proffers as true" and construes those facts "in the light most congenial to the plaintiff's jurisdictional claim." Hannon, 524 F.3d at 279 (internal quotation marks and citations omitted).

A court may exercise authority over a defendant by virtue of either general or specific

jurisdiction. Mass. Sch. of Law at Andover, Inc. v. Am. Bar Ass'n, 142 F.3d 26, 34 (1st Cir. 1998). General jurisdiction exists when the defendant has engaged in "continuous and systematic activity" in the forum, even if the activity is unrelated to the suit. United Elec., Radio & Mach. Workers v. 163 Pleasant St. Corp., 960 F.2d 1080, 1088 (1st Cir. 1992). "In the absence of general jurisdiction, a court's power depends upon the existence of specific jurisdiction." Mass. Sch. of Law, 142 F.3d at 34. Kelley has not alleged that the RI DOC Defendants have engaged in "continuous and systematic activity" in Massachusetts. Thus, to establish specific jurisdiction, Kelley must demonstrate that the Massachusetts long-arm statute grants jurisdiction over the RI DOC Defendants and that the exercise of that jurisdiction comports with the Due Process Clause of the Fifth Amendment. Adelson, 510 F.3d at 48.[7]

2. Massachusetts Long-Arm Statute

In Massachusetts, a court may exercise personal jurisdiction over a foreign defendant if such jurisdiction is authorized by state statute and its exercise does not offend due process. United Elec., Radio & Mach. Workers, 960 F.2d at 1086. The Massachusetts long-arm statute,

---

[7] Because Kelley is suing for alleged Section 1983 violations, this Court's subject matter jurisdiction is based on a federal question. See Complaint, p. 1; 28 U.S.C. § 1331. Accordingly, the constitutional limits of the court's personal jurisdiction are drawn from the Due Process Clause of the Fifth Amendment. Lorelei Corp. v. County of Guadalupe, 940 F.2d 717, 719 (1st Cir. 1991); United Elec., Radio & Mach. Workers, 960 F.2d at 1085; Swiss American Bank, Ltd., 274 F.3d at 618. Nevertheless, "the basis for service of process returnable to a particular court must be grounded within a federal statute or civil rule." United Elec., Radio & Mach. Workers, 960 F.2d at 1085. Rule 4(k)(1) provides that when service is made outside of the boundaries of the state where the District Court sits, such service is effective to establish personal jurisdiction where the defendant "could be subjected to the jurisdiction of a court of general jurisdiction in [that] state." By virtue of Rule 4, the Court must analyze whether the RI DOC Defendants would be subject to personal jurisdiction in Massachusetts, which implicates the Massachusetts long-arm statute. Thus, even though this is a federal question case, the Fourteenth Amendment minimum contacts analysis acts indirectly on the exercise of jurisdiction because the Massachusetts long-arm statute is subject to Fourteenth Amendment limitations. United Elec., Radio & Mach. Workers, 960 F.2d at 1086; Lorelei, 940 F.2d at 720.

6

Mass. Gen. Laws. c. 223A § 3, states that a court may exercise personal jurisdiction over a defendant for a cause of action arising from a defendant's transacting any business in Massachusetts. Mass. Gen. Laws c. 223A, § 3(a). This provision "should be construed broadly" and "does not require that the defendant have engaged in commercial activity. The language is general and applies to any purposeful acts by an individual, whether personal, private, or commercial." Hannon, 524 F.3d at 280 (quotation and citation omitted). Physical presence is not required in order to transact business in Massachusetts. Id. Thus, the Court must determine whether (1) the RI DOC Defendants transacted business in Massachusetts, and (2) whether Kelley's claims arise from this transaction.

Construing Kelley's pleadings liberally, Kelley asserts claims against the RI DOC Defendants in both their individual and official capacities.[8] Kelley asserts that the RI DOC Defendants are subject to the long-arm statute because they, and/or the prison or entity for which they work, are a party to the Compact, which Kelley asserts is a multi-million dollar contract. See Plaintiff's Opposition, Docket No. 63, p. 1; Plaintiff's Opposition, Docket No. 61, p. 2. In Hannon v. Beard, the First Circuit held that an out of state prison official "transacted business" in Massachusetts for purposes of the long-arm statute on the basis of his conduct pursuant to an Interstate Corrections Compact ("ICC") between Massachusetts and Pennsylvania. 524 F.3d at 281. On this basis, Kelley arguably has made a prima facie showing that the RI DOC Defendants, in their official capacities, "transacted business" in Massachusetts through their participation in the Compact.

To the extent that Kelley argues that the Court has personal jurisdiction over the RI DOC

---

[8] Kelley only specifically sues Defendant Wall in his official capacity. See Complaint, p. 2.

7

Defendants in their individual capacities, this argument fails.[9] Kelley has not presented any evidence that the RI DOC Defendants in their individual capacities have transacted business in Massachusetts. See Ali v. District of Columbia, 278 F.3d 1, 7 (D.C. Cir. 2002) (no personal jurisdiction over prison officials in their individual capacity because there were no allegations that they transacted business or contracted to do so in forum state); Ibrahim v. District of Columbia, 357 F. Supp. 2d 187, 192-3 (D.D.C. 2004) (same); Trujillo v. William, 465 F.3d 1210, 1218 n. 9 (10th Cir. 2006) (finding that court did not have jurisdiction over out of state prison officials because there were no allegations that they had any contact with forum state in their personal capacities); Bertram v. Wall, No. 01-422, 2002 U.S. Dist. LEXIS 15378, *11-12 (D.R.I. July 11, 2002) (ICC insufficient to demonstrate individual contacts by out of state defendants). Accordingly, this Court does not have personal jurisdiction over the RI DOC Defendants in their individual capacities.

Kelley must show that his cause of action arises from the RI DOC Defendants' participation in the Compact. In this respect, Kelley's situation is distinct from that of the plaintiff in Hannon. In Hannon, the First Circuit based its determination that the out of state prison official was subject to the Massachusetts long-arm statute on the fact that the plaintiff's cause of action was directly related to the Compact – specifically that the out of state prison official had allegedly used the Compact as a means to deprive the plaintiff of his constitutional rights. Hannon, 524 F.3d at 281. Here, Kelley has not presented any evidence that his cause of action regarding prison conditions and the conduct of prison officials "arises from" the RI DOC Defendants' participation in the Compact.

---

[9] As noted above, the bulk of Kelley's allegations are made against the RI DOC Defendants in their individual capacities.

Even assuming, arguendo, that the RI DOC Defendant's participation in the Compact was sufficient to establish personal jurisdiction under the long-arm statute, this Court may only assert jurisdiction over the RI DOC Defendants in their official capacities if it comports with the requirements of due process. This analysis has three distinct components: "relatedness, purposeful availment (sometimes called 'minimum contacts'), and reasonableness." Hannon, 524 F.3d at 282 (internal quotations and citations omitted).

To satisfy the relatedness component, Kelley's claim must "arise out of, or be related to, the defendant's in-forum activities." Hannon, 524 F.3d at 282. This standard is flexible and focuses on the nexus between the defendant's contacts with the forum and the plaintiff's cause of action. Id. However, there must be more than "an attenuated connection between the contacts and the claim; the defendant's in-state conduct must form an important, or at least material, element of proof in the plaintiff's case." Phillips v. Prairie Eye Center, 530 F.3d 22, 27 (1st Cir. 2008) (internal quotation marks omitted); United Elec., Radio & Mach. Workers, 960 F.2d at 1089. Thus, the inquiry is whether Kelley "has established cause in fact (i.e., the injury would not have occurred but for the defendant's forum-state activity) and legal cause (i.e., the defendant's in-state conduct gave birth to the cause of action)." Hannon, 524 F.3d at 282.

As stated above, Kelley has failed to establish his claim is related to the RI DOC's participation in the Compact. To be sure, Kelley is in a Rhode Island prison because of the Compact. However, the Compact "is not a free ticket for personal jurisdiction . . . over prison officials who are parties to the Compact." Hannon, 524 F.3d at 283; cf Swiss American Bank, Ltd., 274 F.3d at 621 ("A contract, by itself, cannot automatically establish minimum contacts."). Kelley has not established a causal nexus between the RI DOC Defendants' participation in the

9

Compact and Kelley's alleged injuries at the hands of the prison guards and/or the allegedly unconstitutional conditions at the ACI. In other words, Kelley cannot establish personal jurisdiction because the alleged contacts (the RI DOC Defendants' participation in the Compact) are not related to the alleged harm (the unconstitutional treatment Kelley received at ACI). Hannon, 524 F.3d at 283; see also Sanders v. United States, 760 F.2d 869, 872 (8th Cir. 1985) (finding prisoner did not establish relatedness requirement to enable jurisdiction over out of state defendant because the out of state defendant's transfer of him to the forum state was not related to his cause of action regarding medical treatment). Further, all of the acts alleged in the Complaint pertaining to the RI DOC Defendants occurred in Rhode Island, not Massachusetts. As such, Kelley's claims do not arise out of, or relate to, the RI DOC Defendants' in-forum activities. See Cook v. McLaughlin, 917 F. Supp. 79, 84 (D. Mass. 1996) (prisoner failed to establish relatedness prong because all acts alleged in complaint occurred in Connecticut, not Massachusetts); Trujillo, 465 F.3d at 1221 n. 12 (no relatedness because alleged mistreatment occurred completely within non-forum state).

Because Kelley has failed to establish the relatedness component, this Court need go no further in its jurisdictional analysis. Swiss American Bank, Ltd., 274 F.3d at 625. Kelley has not established that the Massachusetts long arm statute and due process considerations are sufficient for this Court to exercise jurisdiction over the RI DOC Defendants. Accordingly, this Court recommends that the District Court grant the RI DOC Defendants' motion to dismiss.

**B.     MA DOC Defendants' Motion to Dismiss**

The MA DOC Defendants argue that Kelley's claims against them should be dismissed because: (1) Kelley cannot bring a suit for damages against them in their official capacities; (2)

Kelley has failed to state a claim against them in their individual capacities; and (3) they are entitled to qualified immunity.

        1.        Standard of Review

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id.

Furthermore, the Court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. Langadinos v. American Airlines, Inc., 199 F.3d 68, 69 (1st Cir. 2000). Pro se pleadings are to be liberally construed. Ayala Serrano v. Gonzalez, 909 F.2d 8, 15 (1st Cir. 1991). While the court must accept as true all of the factual allegations contained in the complaint, that doctrine is not applicable to legal conclusions. Iqbal, 129 S.Ct. at 1949. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id.; see also Sanchez v. Pereira-Castillo, 590 F.3d 31, 48 (1st Cir. 2009) ("In other words, a plaintiff must offer 'more than an unadorned, the-defendant-unlawfully-harmed-me accusation,' in order to claim a 'plausible entitlement to relief.'") (citations omitted). Accordingly, a complaint does not state a claim for relief where the well-pleaded facts fail to warrant an inference of any more than the mere possibility of misconduct. Iqbal, 129 S.Ct. at 1950.

2. <u>42 U.S.C. § 1983</u>

Section 1983 is a vehicle through which individuals may sue certain persons acting under the color of state law for deprivation of federally assured rights. <u>Gagliardi v. Sullivan</u>, 513 F.3d 301, 306 (1st Cir. 2008). Specifically, Section 1983 states:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress ... .

42 U.S.C. § 1983. Section 1983 is "not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred." <u>Graham v. Connor</u>, 490 U.S. 386, 393-4 (1989).

"A claim under Section 1983 has two essential elements. First, the challenged conduct must be attributable to a person acting under color of state law" and "second, the conduct must have worked a denial of rights secured by the Constitution or by federal law." <u>Soto v. Flores</u>, 103 F.3d 1056, 1061 (1st Cir. 1997). For purposes of the MA DOC Defendants' motion, there is no dispute that the Defendants were acting under color of state law. However, Defendants contend that Kelley has failed to state a claim that they deprived him of any constitutional rights.

3. <u>Claim Against MA DOC Defendants In Their Official Capacities</u>

Construing Kelley's pleadings liberally, Kelley has sued the MA DOC Defendants in both their individual and official capacities. However, a state official acting in his official capacity cannot be sued for damages in a Section 1983 action. <u>Wang v. New Hampshire Board of Registration in Medicine</u>, 55 F.3d 698, 700 (1st Cir. 1995); <u>Rafferty v. Cranston Pub. Sch. Comm.</u>, 315 F.3d 21, 28 (1st Cir. 2002). Therefore, Kelley cannot pursue money damages

12

against the MA DOC Defendants in their official capacities and those claims should be dismissed.[10]

    4.  <u>Claim Against the MA DOC Defendants In Their Individual Capacities</u>

Again, construing Kelley's pleadings liberally, the Court reads Kelley's complaint as asserting a claim against Spencer in his supervisory capacity and against Mici for her actions as an individual and as a supervisor. In either context, however, the analysis is the same. "Because vicarious liability is inapplicable to ... § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, have violated the Constitution." <u>Iqbal</u>, 129 S.Ct. at 1948. "Absent vicarious liability, each Government official, his or her title notwithstanding, is only liable for his or her own misconduct." <u>Id.</u> at 1949. The Court will analyze Kelley's claims against Spencer and Mici in turn.

    a.  <u>Allegations Against Spencer</u>

Kelley refers to Spencer in only two paragraphs in his complaint. Specifically, Kelley alleges that Spencer, as the Commissioner of the Massachusetts DOC, is "at all times a defendant, who governs, oversees and runs the entire Dept. Of Corrections in Massachusetts" and that he is "responsible for all violations of the Interstate Compact regarding fair treatment." Complaint, p. 3, 6. These allegations simply parrot the standard for supervisory liability in the Section 1983 context, and is the sort of "the-defendant-unlawfully-harmed-me" allegations that both the Supreme Court and the First Circuit have found insufficient to state a claim. <u>See</u> <u>Iqbal</u>, 129 S.Ct. at 1949; <u>Sanchez v. Perira-Castillo</u>, 590 F.3d 31, 49 (1st Cir. 2009). Accordingly, the

---

[10] To the extent that Kelley intended to sue the MA Department of Correction itself for money damages, such claims must also be dismissed, as the MA Department of Correction is not a "person" within the meaning of 42 U.S.C. § 1983. <u>Will v. Michigan Dept. of State Police</u>, 491 U.S. 58 (1989); <u>Pennhurst State School & Hospital v. Halderman</u>, 465 U.S. 89 (1984).

13

Court recommends that the District Court dismiss Kelley's claims against Spencer.

      b.  <u>Allegations Against Mici</u>

  Kelley alleges that Mici was indifferent to his safety because she "simply sent a letter" to the Classification Director in Rhode Island when prison officials informed her that Kelley's life was in danger and "(NEVER) took any steps" to ensure Kelley's safety. Complaint, p. 6; Kelley Affidavit, p. 1. As detailed below, Kelley has failed to state a claim.

  A prison official's deliberate indifference to a substantial risk of harm to an inmate violates the Eighth Amendment. <u>Farmer v. Brennan</u>, 511 U.S. 825, 828 (1994). To establish an Eighth Amendment claim for a failure to protect, Kelley must show that: (1) objectively, the deprivation alleged is sufficiently serious, <u>i.e.</u> that the conditions of incarceration pose a substantial risk of serious harm; and (2) subjectively, that Mici was deliberately indifferent to Kelley's health or safety. <u>Id.</u> at 834. A prison official may be liable for acting with deliberate indifference only if the official "knows of and disregards an excessive risk to inmate health and safety; the official must be both aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." <u>Id</u>. at 837. Therefore, in order to establish deliberate indifference, Kelley must show that "(1) [Mici] knew of (2) a substantial risk (3) of serious harm and (4) disregarded that risk." <u>Calderon-Ortiz v. Laboy-Alvarado</u>, 300 F.3d 60, 64 (1st Cir. 2002).

  Kelley has failed to allege a viable Eighth Amendment claim against Mici because Kelley has not sufficiently alleged that Mici knew that Kelley was in a substantial risk of serious harm and disregarded that risk. Although Kelley alleges that Mici was aware that his life was in "danger," he does not provide even the most basic information about this alleged risk of harm,

14

such as the level or type of danger and the nature of the threat (i.e. danger at the hands of another inmate, danger at the hands of prison officials, danger because of physical prison conditions, etc.). Even assuming that Kelley sufficiently alleged that he was in a substantial risk of serious harm, Kelley has not alleged that Mici disregarded this risk. In fact, Kelley's own allegations state that Mici took affirmative steps regarding Kelley's safety by contacting the Rhode Island classification director. Accordingly, the Court recommends that the District Court dismiss Kelley's claims against Mici.

        5.        Qualified Immunity

The MA DOC Defendants argue that they are entitled to qualified immunity. MA DOC Defendants' Memo., p. 9-11. Because Kelley has failed to establish a constitutional violation, the Court does not need to address this particular issue. Ruiz-Casillas v. Camacho-Morales, 415 F.3d 127, 134 (1st Cir. 2005); see also Pearson v. Callahan, 555 U.S. 223, 242 (2009) (where qualified immunity is raised, "the judges of the district courts and courts of appeals are in the best position to determine the order of decision making that will be facilitate the fair and efficient disposition of each case.").

**C.    Kelley's Motions For Injunctive And Other Relief**

        1.        Motions For Injunctive And Other Relief Against RI DOC Defendants

Kelley has filed numerous motions seeking injunctive relief against the RI DOC Defendants. As the party moving for preliminary injunction, Kelley has the burden to show: (1) a substantial likelihood of success on the merits; (2) a significant risk of irreparable harm if the injunction is denied; (3) the harm he will suffer outweighs the any harm to defendants if the preliminary injunction is granted; and (4) the preliminary injunction will promote the public

interest. McGuire v. Reilly, 260 F.3d 36, 42 (1st Cir. 2001).

Because this Court recommends that all claims against the RI DOC Defendants be dismissed for lack of personal jurisdiction, the Court further recommends that the District Court deny the following motions:

1. Motion seeking protection from retaliation and allowing him to post legal mail, (Docket No. 3);

2. Motion seeking photocopies of the complaint and outside recreation, (Docket No. 9);[11]

3. Motion seeking an order to return to the Massachusetts prison system, (Docket No. 14);

4. Motion for an order that ACI construct new toilet facilities, (Docket No. 20);

5. Motion for shower partitions, (Docket No. 26);

6. Motion to fine RI DOC Defendants for retaliation, (Docket No. 38);

7. Motion for protective order, injunction, and common law liens on the assets of the Defendants for continual retaliation because of litigation, (Docket No. 62);

8. Motion for order of protection from the RI DOC defendants, (Docket No. 65); and

9. Motion for immediate release from unlawful restraint, (Docket No. 66).[12]

    2.    <u>Motion For Order Of Transfer</u>

On August 11, 2011, Kelley filed a motion requesting that the Court order that he be

---

[11] The Court notes that its August 12, 2011 Order directed the U.S. Marshals Service to serve defendants with a copy of the complaint. Docket No. 25.

[12] To the extent that any of these motions could be construed as seeking relief from the MA DOC Defendants, this Court's recommendation that the claims against the MA DOC Defendants' be dismissed precludes such relief.

16

transferred from Rhode Island to Massachusetts on the basis that his life was in danger because he had been labeled as a "snitch." (Docket No. 11).[13] Because Kelley is technically a Massachusetts prisoner, the Court interprets Kelley's motion as seeking relief against the Massachusetts DOC Defendants. Because this Court recommends that the claims against the MA DOC Defendants be dismissed, it further recommends that Kelley's motions seeking relief from those same defendants be denied.

### 3. Motions For Summary Judgment And Default

On September 21, 2011, Kelley moved for an entry of default and for summary judgment against the RI DOC Defendants on the basis that the RI DOC Defendants had not responded to his complaint. (Docket Nos. 56, 58). As detailed above, the RI DOC Defendants have responded to Kelley's complaint by filing a motion to dismiss. (Docket No. 59). Accordingly, this Court recommends that the District Court deny these motions.

## III. CONCLUSION

For the foregoing reasons, I recommend that the District Court grant the RI DOC Defendants' motion to dismiss (Docket No. 59); grant the MA DOC Defendants' motion to dismiss (Docket No. 53); and deny Kelley's remaining motions (Docket Nos. 3, 9, 11, 14, 20, 26, 38, 56, 58, 62, 65, and 66).

---

[13] On August 12, 2011, the Court, recognizing that the defendants at that time had not been served and that the RI DOC Defendants might seek to assert an affirmative defense that this district court lacks personal jurisdiction over them, requested that the Massachusetts and/or Rhode Island Departments of Correction file a Status Report within 14 days of the date of the Order addressing Kelley's safety allegations. The Defendants complied on August 17 and August 24, 2011. See Docket Nos. 32, 35. The RI DOC Defendants submitted an affidavit by Robert J. Catlow, Rhode Island Department of Corrections Inspector, Office of Internal Affairs, which stated that Catlow had interviewed Kelley and that Kelley had told him that he did not fear for his safety from the inmate population. See Affidavit of Robert J. Catlow, ¶ 6. (Docket No. 32).

**IV. REVIEW BY DISTRICT JUDGE**

The parties are hereby advised that under the provisions of Fed. R. Civ. P. 72(b), any party who objects to these proposed findings and recommendations must file specific written objections thereto with the Clerk of this Court within 14 days of the party's receipt of this Report and Recommendation. The written objections must specifically identify the portion of the proposed findings, recommendations, or report to which objection is made, and the basis for such objections. See Fed. R. Civ. P. 72. The parties are further advised that the United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with Fed. R. Civ. P. 72(b) will preclude further appellate review of the District Court's order based on this Report and Recommendation. See Phinney v. Wentworth Douglas Hospital, 199 F.3d 1 (1st Cir. 1999); Sunview Condo. Ass'n v. Flexel Int'l, 116 F.3d 962 (1st Cir. 1997); Pagano v. Frank, 983 F.2d 343 (1st Cir.1993).

/s/ Jennifer C. Boal
JENNIFER C. BOAL
United States Magistrate Judge